# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

MAY 26 A 10:26

| | |
|---|---|
| POWER TOOL SPECIALISTS, INC., ) | U.S. DISTRICT COURT |
| ) | DISTRICT OF MASS |
| Plaintiff, ) | Civil Action No. _04 - 30103 MAP_ |
| ) | |
| v. ) | |
| ) | |
| WMH TOOL GROUP, INC., ) | |
| ) | (Our Docket No. 5038-40) |
| Defendant. ) | |

## COMPLAINT

Plaintiff Power Tool Specialists, Inc. (hereinafter "Plaintiff") brings this Action for trademark infringement and unfair competition against Defendant WMH Tool Group, Inc. (hereinafter "Defendant). For its Complaint, Plaintiff alleges:

## The Parties

1.      Plaintiff is a corporation of the Commonwealth of Massachusetts, and has a principal place of business at 3 Craftsman Road, East Windsor, Connecticut 06088.

2.      Upon information and belief, Defendant (f/k/a Wilton Corporation) is a corporation of the State of Washington, and has a place of business at 300 South Hicks Road, Palatine, Illinois 60067-6900 and corporate headquarters at 2420 Vantage Drive, Elgin, Illinois 60123. Upon further information and belief, Defendant is a corporation by merger which included the former Wilton Corporation (hereinafter "Wilton"), a corporation of the state of Colorado having a principal place of business at 300 South Hicks Road, Palatine, Illinois 60067-6900.



1

## Jurisdiction and Venue

3.     Jurisdiction of this Court with respect to the claims set forth herein arises under the Trademark Laws of the United States, as set forth in Title 15, United States Code; and for the related claims of unfair competition, false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Mass. Gen. Laws c. 93A, § 1 *et seq.* This Court also has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332, as the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00) and arises between an entity of this state and an entity of another state. The Court also has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b), and under the doctrine of supplemental and pendant jurisdiction.

4.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a).

## Background Facts Common to All Counts

5.     Plaintiff is, and has been at all times relevant to the matters alleged in this Complaint, engaged in the business of providing bench and stationary power tools marketed under the TRADESMAN Brand Name.

6.     In recognition of the distinctive quality of the TRADESMAN trademark, the United States Patent and Trademark Office has granted United States Trademark Registration No. 1,565,504 for the TRADESMAN trademark. (See Exhibit A).

7.     In recognition of the distinctive quality of the TRADESMAN trademark, the United States Patent and Trademark Office has granted United States Trademark Registration No. 2,205,373 for the TRADESMAN trademark. (See Exhibit B).

8.     U. S. Trademark Registration Nos. 1,565,504 and 2,205,373 for TRADESMAN are in full force and effect, and Plaintiff is the owner of the trademarks, the registrations therefor and the goodwill associated therewith.

2

9.    U.S. Trademark Registration No. 1,565,504 has achieved incontestable status pursuant to 15 U.S.C. § 1065.

10.    U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 survived Cancellation Proceedings No. 30,322 filed by Snap-On Tools Company on March 23, 2000.

11.    Each of U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 is prima facie evidence of the validity of the registration, of Plaintiff's ownership of the TRADESMAN mark, and of Plaintiff's exclusive right to use the TRADESMAN mark in commerce on the types of goods identified in the Registrations, as provided in 15 U.S C §§ 1057(b) and 1115(a).

12.    U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 are constructive notice of Plaintiff's claim of ownership of the TRADESMAN mark pursuant to 15 U.S.C. § 1072.

13.    PLAINTIFF also has pending trademark applications before the United States Patent and Trademark Office directed to the term "TRADESMAN". All of the foregoing marks, including the marks registered in U.S. Trademark Registration Nos. 1,565,504 and 2,205,373, are collectively referred to hereinafter as the "TRADESMAN mark".

14.    Plaintiff has expended considerable time, money and effort in developing, advertising and promoting the TRADESMAN mark to acquire the goodwill associated therewith. Plaintiff has made such investment to cause consumers to recognize the TRADESMAN mark as distinctly designating Plaintiff's products as originating and otherwise being affiliated with Plaintiff in order to further develop and trade upon the goodwill associated with the TRADESMAN mark.

15.    The TRADESMAN mark has acquired secondary meaning in the mind of the public which equates the mark with Plaintiff and Plaintiff's products.

16.    Plaintiff has expended considerable time, money and effort in enforcing its rights in the TRADESMAN mark against other companies using, or attempting to use, the TRADESMAN mark in connection with goods and services identical to and/or confusingly similar to those goods with which Plaintiff uses its TRADESMAN mark.

17.    Upon information and belief, Defendant is engaged in the business of manufacturing, marketing and distributing power tools and machines for use in application including drilling, tapping, milling, turning, sawing, abrasive finishing and surface grinding.

18.    Defendant and/or its predecessor-in-interest Wilton have used, and upon information and belief, continue to use the TRADESMAN mark on their products, including "Mill/Drill Machines", "Power Feed Mill/Drill Machines", "Drilling Machines", "Drill Presses", "Belt Sanders", "Combination Belt & Disc Finishing Machines", "Combination Wood/Metal Vertical Band Saws", "Lathes", and "Vises".

19.    Upon information and belief, Defendant primarily markets power tools and machines with the TRADESMAN mark for use in work shops, but does not restrict sales to such work shops, and as such markets and promotes power tools and machines for home workshop and commercial use generally.

20.    Upon information and belief, Defendant's use of the TRADESMAN mark has not been continuous, and Defendant and/or Wilton has admitted that any use of the TRADESMAN mark by Defendant has not created any rights for Defendant in the mark. Upon further information and belief, Defendant and/or Wilton reinstituted use of the TRADESMAN mark after each period of abandoned use.

21.    Neither Defendant nor its predecessor-in-interest Wilton has ever received authorization from Plaintiff to use the TRADESMAN mark.

22.    Notwithstanding Plaintiff's continuous and exclusive use and promotion of the TRADESMAN mark, Defendant and/or Wilton appropriated for their own benefit and use the TRADESMAN mark in connection with products identical or

4

substantially identical to Plaintiff's products, including power tools, for sales and promotions which target the same class of customers.

23.    On June 29, 1995, a letter was sent to Wilton by Plaintiff to notify Wilton of Plaintiff's rights under the trademark laws with respect to the TRADESMAN mark, and requesting Wilton to cease-and-desist use of the TRADESMAN mark. A copy of this letter is attached hereto as Exhibit C.

24.    On August 3, 1995, a letter was sent to Wilton by Plaintiff requesting evidence to substantiate Wilton's claim of continuous use of the TRADESMAN mark, as well as examples of how Wilton was using the mark in connection with its products. A copy of this letter is attached hereto as Exhibit D. Wilton never provided any evidence of such continuous use of the TRADESMAN mark in response to Plaintiff's letter.

25.    Plaintiff was not aware of Wilton use of the TRADESMAN mark for approximately ten years preceding 1995.

26.    Upon information and belief, due to Wilton's failure to respond to Plaintiff's letters and prove continuous use of the TRADESMAN mark, Plaintiff understood that Wilton had abandoned use of the TRADESMAN mark for a period of time following Plaintiff's letters in 1995 up and until about 2001.

27.    Upon information and belief, after a period of abandoned use of the TRADESMAN mark between about 1995 and about 2001, Wilton again began using the mark in about 2001 without permission from Plaintiff.

28.    On October 15, 2001, a letter was sent to Wilton on behalf of Plaintiff to remind Wilton of Plaintiff's rights under the trademark laws with respect to the TRADESMAN mark, and again requesting Wilton to cease-and-desist use of the TRADESMAN mark. A copy of this letter is attached hereto as Exhibit E.

29.    A December 7, 2001 letter, attached hereto as Exhibit F, confirms discussions between counsel for Plaintiff and Ernie Torkilsen of Wilton concerning the

5

TRADESMAN mark. It was Plaintiff's understanding at that time that Wilton had agreed via oral communications to terminate further use of the TRADESMAN mark in connection with power tools, including without limitation the "Tradesman Mill/Drill Machine"; "Tradesman Power Feed Mill/Drill Machine"; "Tradesman Drilling Machines"; "Tradesman Drill Presses"; "Tradesman Belt Sanders"; "Tradesman Combination Belt & Disc Finishing Machine"; and "Tradesman Combination Wood/Metal Vertical Band Saws". It was also Plaintiff's understanding that such agreement was subject to a mutually-agreeable phase out period during which Wilton would be permitted to transition to a different mark. It was further Plaintiff's understanding that Wilton would provide Plaintiff with evidence and documents evidencing any prior continuous use of the TRADESMAN mark in connection with vises.

30.    Wilton never directly responded, in writing, to Plaintiff's December 7, 2001 letter and failed at that time to provide any evidence of prior continuous use of the TRADESMAN mark.

31.    In about April 2004, Plaintiff became aware that Wilton, now owned by and associated with Defendant, was again using the TRADESMAN mark in connection with power tools and machines identical to and/or confusingly similar to Plaintiff's TRADESMAN product line, including, but not limited to promotion of products on a web site operated by Blue Ridge Machinery, "www.blueridge.dreamscape.com".

32.    Conversations between Plaintiff and Defendant were again conducted in 2004, at which time, Defendant asserted that it did not plan to remove the TRADESMAN mark from its products. Defendant reasserted its position in a letter dated May 14, 2004 from its counsel addressed to Plaintiff. A copy of this letter is attached hereto as Exhibit G.

33.    Defendant continues to use the TRADESMAN mark, including with respect to power tools identical and/or confusingly similar to Plaintiff's products, though Defendant asserts that it is not using the term "TRADESMAN" in a trademark sense and therefore is not alleging any rights to the TRADESMAN mark.

6

## Count I
## Federal Trademark Infringement

34.     Plaintiff realleges each and every allegation set forth in paragraphs 1-33 inclusive, and incorporates those paragraphs by reference herein.

35.     The unauthorized use by Defendant of a product designation confusingly similar to Plaintiff's federally registered TRADESMAN trademarks, namely U.S. Trademark Registration No. 1,565,504 (Exhibit A), in connection with products identical to or substantially similar to those of Plaintiff's TRADESMAN product line is likely to cause confusion, mistake, or deception, as to the source or origin of the services, and as such infringes upon Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1114.

36.     Upon information and belief, Defendant's use and misappropriation of Plaintiff's TRADESMAN mark in connection with products identical and/or substantially similar to those of Plaintiff's TRADESMAN product line is part of a deliberate plan of Defendant to trade on the valuable goodwill and reputation established by Plaintiff in the TRADESMAN mark and, as such, the infringement is willful.

37.     The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN pursuant to 15 U.S.C. §§ 1114 and 1116.

38.     As a result of Defendant's infringement of the TRADESMAN mark, Plaintiff has been damaged and will continue to be damaged in an amount that cannot be presently ascertained or adequately compensated for in money damages, and will suffer further injury and irreparable harm unless and until Defendant's acts of infringement are enjoined.

## Count II
## Federal Trademark Infringement

39.     Plaintiff realleges each and every allegation set forth in paragraphs 1-38 inclusive, and incorporates those paragraphs by reference herein.

40.     The unauthorized use by Defendant of a product designation confusingly similar to Plaintiff's federally registered TRADESMAN trademarks, namely U.S. Trademark Registration No. 2,205,373 (Exhibit B), in connection with products identical to or substantially similar to those of Plaintiff's TRADESMAN product line is likely to cause confusion, mistake, or deception, as to the source or origin of the services, and as such infringes upon Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1114.

41.     Upon information and belief, Defendant's use and misappropriation of Plaintiff's TRADESMAN mark in connection with products identical and/or substantially similar to those of Plaintiff's TRADESMAN product line is part of a deliberate plan of Defendant to trade on the valuable goodwill and reputation established by Plaintiff in the TRADESMAN mark and, as such, the infringement is willful.

42.     The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN pursuant to 15 U.S.C. §§ 1114 and 1116.

43.     As a result of Defendant's infringement of the TRADESMAN mark, Plaintiff has been damaged and will continue to be damaged in an amount that cannot be presently ascertained or adequately compensated for in money damages, and will suffer further injury and irreparable harm unless and until Defendant's acts of infringement are enjoined.

<u>Count III</u>

<u>Lanham Act Violations – False Designation of Origin and False Advertising</u>

44.    Plaintiff realleges each and every allegation set forth in paragraphs 1-43 inclusive, and incorporates those paragraphs by reference herein.

45.    This count arises under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)

46.    Plaintiff has developed substantial goodwill and customer recognition in its TRADESMAN product line through extensive promotion and advertising.

47.    Upon information and belief, Defendant and its predecessor-in-interest Wilton have had prior knowledge of Plaintiff's TRADESMAN mark.  Defendant and Wilton were notified of the TRADESMAN mark by way of at least Plaintiff's letters demanding that Defendant's and Wilton's infringing activities cease.  (See Exhibits C and E).

48.    Defendant's use of Plaintiff's TRADESMAN mark to identify Defendant's products is confusingly similar to use of the TRADESMAN mark by Plaintiff.

49.    The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1125(a).

50.    Due to confusion created by Defendant's use of the TRADESMAN mark, Defendant has unjustly received the benefit of Plaintiff's advertising and promotion of and goodwill in the TRADESMAN mark and product line.

51.     The TRADESMAN mark is willfully and intentionally used by Defendant with the intent to trade on and benefit from the goodwill associated with Plaintiff's TRADESMAN mark and product line in the minds of purchasers.

52.     Defendant's use of the TRADESMAN mark to identify its products is likely to mislead and misrepresent the source or origin of Defendant's products, and results in a false belief by consumers that Defendant's business is associated with Plaintiff and is authorized to use the TRADESMAN mark.

53.     As a result of Defendant's false or misleading representations, Plaintiff has been damaged in an amount that is unknown and cannot at the present time be ascertained.

54.     Unless enjoined by this Court, Defendant will continue to make false or misleading representations, to Plaintiff's continuing and irreparable injury for which there is no adequate remedy at law.

## COUNT IV
## Unfair Competition

55.     Plaintiff realleges each and every allegation set forth in paragraphs 1-54 inclusive, and incorporates those paragraphs by reference herein.

56.     By virtue of the foregoing acts, Defendant has used unfair methods of competition and unfair acts or deceptive acts or practices in the conduct of a trade or commerce, all in violation of the Mass. Gen. Laws c. 93A, § 1 *et seq.* and the common law of unfair competition.

57.     The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such

is a violation of the common law of unfair competition and is an unfair trade practice under applicable law.

58.    As a result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff has been damaged in an amount that is unknown and cannot at the present time be ascertained.

59.    Unless enjoined by this Court, Defendant will continue to use unfair methods of competition and unfair or deceptive acts or practices, to Plaintiff's continuing and irreparable injury for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, as relief, Plaintiff prays that:

1.    Defendant, its owners, agents, servants, employees, attorneys, affiliates and all others in active concert or participation with it, be preliminarily and permanently enjoined and restrained from (1) using Plaintiff's TRADESMAN trademarks, logos and other designations or indicia which are likely to cause confusion, mistake, or deception with respect to Plaintiff's rights; and (2) otherwise infringing rights in Plaintiff's TRADESMAN trademarks, and competing unfairly with Plaintiff.

2.    Defendant accounts for and pays to Plaintiff such damages, together with prejudgment interest thereon, as Plaintiff has sustained as a consequence of Defendant's infringement of Plaintiff's TRADESMAN marks, and account for and return to Plaintiff any money, profits and advantages wrongfully gained by Defendant because of such infringing actions.

3.    Defendant accounts for and pays to Plaintiff such damages arising from Defendant's violations of the Lanham Act § 43(a), and Mass. Gen. Laws c. 93A, § 1 *et seq.*, and the common law of unfair competition.

11

4.     Plaintiff be awarded treble damages due to Defendant's willful infringement.

5.     Plaintiff be awarded its reasonable attorney's fees, costs, interest, and other expenses as allowed by 15 U.S.C. § 1117(a), Mass. Gen. Laws c. 93A, § 9, or any other applicable provision.

6.     Plaintiff be awarded its damages for injury to goodwill and reputation caused by Defendant.

7.     Defendant be ordered to post in a publication approved by Plaintiff an advertisement acknowledging ownership by Plaintiff of the TRADESMAN marks, or issue a retraction or apology by other such means as approved by Plaintiff.

8.     Plaintiff be awarded such other and further relief as this Court may deem just and equitable.

Respectfully submitted,

POWER TOOL SPECIALISTS, INC.
Plaintiff

Dated: _May 26, 2004_          By _____
                                  J. Kevin Grogan (BBO635089)
                                  Arthur F. Dionne (BBO125760)
                                  McCormick, Paulding & Huber LLP
                                  1350 Main Street
                                  5th Floor
                                  Springfield, MA 01103
                                  Tel.: 860-549-5290
                                  Fax: 860-527-0464
                                  Attorney for the Plaintiff

_Of Counsel_:

Wm. Tucker Griffith
McCormick, Paulding & Huber LLP
CityPlace II, 185 Asylum Street
Hartford, CT 06103-4102
Tel.: (860) 549-5290
Fax: (860) 527-0464

Int. Cl.: 7

Prior U.S. Cl.: 23

**United States Patent and Trademark Office**
Corrected

Reg. No. 1,565,894
Registered Nov. 14, 1989
OG Date Aug. 6, 1996

## TRADEMARK
## PRINCIPAL REGISTER

## TRADESMAN

POWER TOOL SPECIALISTS, INC.
(MASSACHUSETTS CORPORATION)
3 CRAFTSMAN ROAD
EAST WINDSOR, CT 06088

FOR STATIONARY/BENCH ELEC-
TRIC POWER TOOLS, NAMELY; TABLE
SAWS, FLOOR DRILL PRESSES, MITER

SAWS, FLOOR BAND SAWS, FLOOR
JOINTERS AND PARTS THEREFOR, IN
CLASS 7 (U.S. CL. 23).

FIRST USE 2-6-1987, IN COMMERCE
2-6-1987.

SER. NO. 73-731,976, FILED 3-12-1989.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Aug. 6, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS



Int. Cl.: 7

Prior U.S. Cls.: **13, 19, 21, 23, 31, 34 and 35**

Reg. No. **2,205,373**

## United States Patent and Trademark Office

Registered Nov. 24, 1998

TRADEMARK
PRINCIPAL REGISTER

TRADESMAN

POWER TOOL SPECIALISTS. INC (MASSA-CHUSETTS CORPORATION)
3 CRAFTSMAN ROAD
EAST WINDSOR, CT 06088

FOR: POWER TOOLS, NAMELY, NAILERS. SANDERS, LATHES, SAWS, MORTISING MA-CHINES, DRILL PRESSES, SHAPERS. PLANERS, GRINDERS, JOINTERS, DUST COL-LECTORS, AND PARTS AND ACCESSORIES THEREFOR, INCLUDING CHUCKS, BLADES. BITS, CHISELS, KNIVES, DISCS, DRUMS. WHEELS, BELTS, SLEEVES, ABRASIVE AT-TACHMENTS, ARBORS, DADOS, MOULDING INSERTS, HEX KEYS, BRACKETS, PLATES. VISES, JAWS, CLAMPS, GUAGES, RIP FENCES, GUIDES, EXTENSIONS, JIGS. BLOCKS, WORK SUPPORTS, ROLLERS, STANDS, CASTERS, TABLES, TOOL COLLEC-TORS, DUST CHUTES, VACUUM ATTACH-MENTS, CONTROL SWITCHES, CLEANERS. CHUCK ADAPTORS, AND PUSH BLOCKS, IN CLASS 7 (U.S. CLS. 13, 19, 21, 23, 31, 34 AND 35).

FIRST USE 2-1-1987; IN COMMERCE 2-1-1987.

OWNER OF U.S. REG. NO. 1,565,504.

SER. NO. 75-345,996, FILED 8-25-1997.

GEOFFREY M. MCNUTT, EXAMINING AT-TORNEY





# POWER TOOL SPECIALISTS, INC.

Corporate Headquarters
3 Craftsman Road East Windsor, CT 06088 U.S.A.
Tel: (203) 654-1761 Fax: (203) 654-1937

*Band Saw*
*&*
*Drill Presses*

June 29, 1995

Wilton Corporation
Office Of The President
300 South Hicks Road
Palatine, IL 60067-6941

Dear Sir

It has been brought to our attention that Wilton is using the trademarked name of "Tradesman" on some of their product.

Please be advised that the Tradesman name is a registered trademark for use on Power Tools and it is held by Power Tool Specialists, Inc..

Therefore, we respectfully ask at this time that you cease and desist from any further use of this brand name. Also, that any and all literature bearing the Tradesman name be scrapped.

Thank you for your understanding and we await your confirmation.

Sincerely

POWER TOOL SPECIALISTS, INC.

Anthony J. Borgatti

AJB:sg

Enclosure

cc Chapin, Neal & Dempsey, P.C., Jack Dempsey

**EXHIBIT**

**C**



# POWER TOOL SPECIALISTS, INC.

Corporate Headquarters
3 Craftsman Road   East Windsor, CT 06088 U.S.A.
Tel: (203) 654-1761   Fax: (203) 654-1937

August 3, 1995

Mr. Ernie Torkilsen
WILTON CORPORATION
300 South Hicks Road
Palatine, IL 60067-6941

Dear Mr. Torkilsen

I am in receipt of a copy of your fax to Lawrence Chieng with regard to your using the **Tradesman** name. I am sorry you didn't address your correspondence directly to me as solicited in my letter.

As you might not be aware, we have used the **Tradesman** name for over twenty years. We decided to trademark the name and it was registered in 1989. Further, as you might not be aware, the trademark "Tradesman" became incontestable after five years of continued use in commerce and, therefore, provides conclusive evidence of ownership and the right to its exclusive use. In this connection, the mark's incontestable status limits the defenses afforded to an infringer.

If Wilton Corporation's use of the name is only to describe its goods and they have used the name in this capacity for twenty years, possibly some concessions can be reached. I would like to ask that you provide Power Tool Specialists and its attorneys with proof of Wilton's claims of its <u>continuous</u> use of the "**Tradesman**" mark over the past twenty years and also please furnish us with examples of how the mark was and is currently being used.

Mr. Torkilsen, please be advised this is not a Rexon issue and is in no way connected to them. As I said, I am sure we can come to an agreement and "drop this issue" with proof of your claims.

Sincerely

POWER TOOL SPECIALISTS, INC.

Anthony J. Borgatti
President

AJB:sg

EXHIBIT
D

*A Partnership of*
*Professional Corporations*

# C U M M I N G S  &  L O C K W O O D

CityPlace I
185 Asylum Street
Hartford, CT 06103-3495
860.275.6700
Fax 860.724.3397
www.cl-law.com

Stamford
Hartford
Greenwich
New Haven
West Hartford
Naples
Bonita Springs

October 15, 2001

Mark D. Giarratana
Also Admitted in New York
860-275-6719, Fax 860-560-5919
mgiarr@cl-law.com

## <u>Via Facsimile and Registered Mail/Return Receipt Requested</u>

Wilton Corporation
Attention: President
300 South Hicks Road
Palatine, Illinois 60067-6730

Re:     Infringement of the Trademark TRADESMAN® Owned by Power Tool
        Specialists, Inc.

Dear Sirs:

We represent Power Tool Specialists, Inc. of Windsor, Connecticut, which manufactures and markets a variety of power tools, and accessories therefor, throughout the United States and elsewhere under the well-known trademark TRADESMAN®. The TRADESMAN® trademark is protected by United States trademark registration nos. 1,565,504 and 2,205,373 (copies enclosed). Power Tool Specialists, Inc. has invested substantially in the development and use of the TRADESMAN® trademark, and views its intellectual property -- particularly its TRADESMAN® trademark -- as important and valuable corporate assets, and protects them to the fullest extent allowable by law.

We have recently become aware that your company is using and promoting the mark TRADESMAN for the same types of goods with which Power Tool Specialists, Inc. has long been using its TRADESMAN® mark. The infringing goods include, without limitation, the "Tradesman Mill/Drill Machine"; "Tradesman Power Feed Mill/Drill Machine"; "Tradesman Drilling Machines"; "Tradesman Drill Presses"; "Tradesman Belt Sanders"; "Tradesman Combination Belt & Disc Finishing Machine"; "Tradesman Combination Wood/Metal Vertical Band Saws"; and "Tradesman Vises". We have enclosed for your reference copies of exemplary advertisements published by your company and reflecting its infringement of the TRADESMAN mark. Please be advised that these activities constitute infringement of Power Tool Specialists, Inc.'s valuable trademark rights under federal, state and common law, and violate other applicable law, including unfair competition and unfair trade practices. Moreover, these activities may subject your company to substantial damages, penalties and injunctive remedies.



EXHIBIT
E

Wilton Corporation                    -2-                    October 15, 2001

Accordingly, Power Tool Specialists, Inc. demands that your company, including any and all of its affiliates, immediately cease any and all display, manufacture, ordering, distribution, promotion, advertising, offering for sale, and/or sale of the foregoing power tools, vises and any other products under the TRADESMAN mark, or otherwise in connection with the TRADESMAN mark, and/or any confusingly or deceptively similar mark. Power Tools Specialists, Inc. also demands that your company account for and make available to us no later than **October 31, 2001** exemplary samples or copies of all nameplates, labels, catalogs, advertisements and other promotional materials bearing the TRADESMAN mark, along with written assurance that your company will not further display, manufacture, have manufactured, order, distribute, promote, advertise, offer for sale, and/or sell any products under the TRADESMAN mark, and/or any confusingly or deceptively similar mark.

Nothing in this letter may be construed as a waiver of any rights or claims of Power Tool Specialists, Inc.

We will look forward to your prompt reply.

Sincerely,

Mark D. Giarratana

Enclosures
cc:    Power Tool Specialists, Inc.

.HrtLib1:377660.1 10/15/01

*A Partnership of*
*Professional Corporations*

# C U M M I N G S  &  L O C K W O O D

CityPlace I
185 Asylum Street
Hartford, CT 06103-3495
860.275.6700
Fax 860.724.3397
www.cl-law.com

Stamford
Hartford
Greenwich
New Haven
West Hartford
Naples
Bonita Springs

December 7, 2001

Mark D. Giarratana
Also Admitted in New York
860-275-6719, Fax 860-560-5919
mgiarr@cl-law.com

## Via Facsimile and Regular Mail

Mr. Ernie Torkilsen
Wilton Machinery
300 S. Hicks Road
Palentine, Illinois 60067

Re:   Infringement of the Trademark TRADESMAN® Owned by Power Tool
        Specialists, Inc.

Dear Ernie:

I am writing to confirm our recent discussions concerning the TRADESMAN® mark owned by Power Tool Specialists, Inc. ("PTS").

First, my understanding is that Wilton Corporation is agreeable to terminating further use of the TRADESMAN mark in connection with power tools, including without limitation, the "Tradesman Mill/Drill Machine"; "Tradesman Power Feed Mill/Drill Machine"; "Tradesman Drilling Machines"; "Tradesman Drill Presses"; "Tradesman Belt Sanders"; "Tradesman Combination Belt & Disc Finishing Machine"; and "Tradesman Combination Wood/Metal Vertical Band Saws". I further understand that such agreement is subject to a mutually-agreeable phase out period during which Wilton may transition to a different mark.

Second, we understand that you assert that Wilton Corp. has been using the TRADESMAN mark in connection with vises since prior to PTS' first use of this mark. You had indicated that you would fax to me copies of documents that you might have evidencing such prior use. Accordingly, please fax and/or mail to me copies of any such documents that Wilton Corp. believes to establish a date of first use of the TRADESMAN mark prior to PTS' fist use of the mark. We also request that you provide us with any evidence that you have establishing that any such use of the TRADESMAN mark by Wilton in connection with vises has been continuous since the date of first use.

Please note that it is important that we promptly resolve this matter. The TRADESMAN mark is an extremely valuable mark to PTS. In addition, we recently have been made aware of instances of consumer confusion arising from Wilton's use of the TRADESMAN mark. Please be advised



Mr. Ernie Torkilsen                    -2-                    December 7, 2001

that PTS will take all reasonable steps necessary to protect and enforce its rights under the TRADESMAN mark.

I will look forward to your reply.

                                              Very truly yours,

                                              *Mark D. Giarratana*
                                              Mr.
                                              Mark D. Giarratana

cc:    Mr. Anthony J. Borgatti

.HrtLib1:382160.1 12/07/01

# FITCH, EVEN, TABIN & FLANNERY

### ATTORNEYS AND COUNSELLORS AT LAW

*Established in 1859*

**SUITE 1600 - 120 SOUTH LA SALLE STREET**
**CHICAGO, ILLINOIS 60603-3406**
TELEPHONE (312) 577-7000
FACSIMILE (312) 577-7007

CALIFORNIA OFFICE
SUITE 250 - 9276 SCRANTON ROAD, SAN DIEGO, CA 92121-7708
TELEPHONE (056) 882-1311

WASHINGTON, D.C. OFFICE
SUITE 401L - 1801 K STREET, NW, WASHINGTON, D.C. 20006-1201
TELEPHONE (202) 419-7000

COLORADO OFFICE
SUITE 213 - 1942 BROADWAY, BOULDER, COLORADO 80302
TELEPHONE (303) 402-6606

May 14, 2004

MORGAN L. FITCH, JR.
FRANCIS A. EVEN
JULIUS TABIN
JOHN F. FLANNERY
ROBERT B. JONES
JAMES J. SCHUMANN
JAMES J. HAMILL
TIMOTHY E. LEVSTIK
JOSEPH E. SHIPLEY
KENNETH H. SAMPLES
PHILIP T. PETTI
JOSEPH T. NABOR
STEVEN C. SCHROER
RICHARD A. KABA*
KARL R. FINK
MARK W. HETZLER
TIMOTHY P. MALONEY
JAMES D. KRUEGER
STEPHEN S. FAVAKEH
RICHARD E. WAWRZYNIAK*
STEVEN G. PARMELEE*
THOMAS F. LEBENS*
BRUCE H. MANSFIELD
KENDREW H. COLTON*
G. PAUL EDGELL
MICHAEL A. SANZO*
SCOTT A. MENGHINI*
NORMAN N. KUNITZ*
RUDY KRATZ
RAMON R. HOCH*

EDWARD E. CLAIR
JON A. BIRMINGHAM
JOHN E. LYTLE
STEVEN M. FREELAND*
DONNA E. BECKER
MICHAEL Q. VRANICAR
BRIAN J. CLISE
MARTIN B. BADER*
DEREK L. PRESTIN
MARK A. BORSOS
DAVID B. JAGLOWSKI
TIMOTHY R. BAUMANN
JEFFREY A. CHELSTROM
NICHOLAS T. PETERS
KENNETH E. PLOCHINSKI
MEGAN J. REDMOND

PATENT AGENTS

ERIC J. WHITESELL
LILIA I. SAFONOV

OF COUNSEL

GEORGE W. SPELLMIRE, JR.
LISA M. SOMMER
GEORGE H. SPENCER, P.C.*

TECHNICAL ADVISOR

JOHN H. BRONK, Ph.D.

*NOT ADMITTED TO ILLINOIS BAR

## VIA FEDERAL EXPRESS

Mr. Bob James
Sales & Marketing Manager
REXON North America
Power Tool Specialists, Inc.
3 Craftsman Road
East Windsor, CT 06088

Re: Allegation of Infringement regarding the designation "WILTON TRADESMAN"

Dear Mr. James:

We represent WMH Tool Group, Inc. in Intellectual Property and other related matters. We are in receipt of and have reviewed an email dated April 16, 2004 to Blue Ridge Machine, which purports to originate from you. A copy of this email is attached hereto as **Exhibit A**. In the email, you allege that Blue Ridge is infringing your company's registered trademark TRADESMAN by its sales of WILTON branded goods in which the descriptive term "Tradesman" appears as identified by certain Order numbers and you demand that Blue Ridge immediately remove references to the goods from its website.

Please be advised that the allegedly infringing goods of which you complain originate from WMH Tool Group, Inc. or its predecessors (hereinafter collectively referred to as "WMH"). Thus, please direct all future communications concerning these goods to our firm. In light of the allegations set forth in your email of April 16, 2004, we further advise you that your communications to WMH's dealers and distributors, such as Blue Ridge, constitutes a tortious interference with WMH's business relationship with its dealers and distributors, which is an actionable offense under the laws of the State of Illinois and others. WMH's ownership of the WILTON mark is well known within the power and hand tool industry; thus, you could have and



EXHIBIT
G

Mr. Bob James
May 14, 2004
Page 2 of 3

should have directly addressed this matter with WMH, without seeking to disrupt the business of
WMH's distributors and dealers. WMH expressly reserves its rights to seek injunction,
monetary damages and other relief arising from your actions on behalf of Power Tool
Specialists, Inc. ("PTS").

WMH strongly believes in protecting its own intellectual property rights and respecting
those of others. However, we believe your claim is without merit because the use of the
designation "Tradesman" by WMH and its dealers and distributors is purely a descriptive fair
use of this term and, even if considered a trademark use, WMH's use of this term predates PTS
by more than thirty years on tools. More particularly, we have reviewed the internet-based
records of the U.S. Patent & Trademark Office in regard to PTS's alleged rights in the term
TRADESMAN and note that PTS's first claim of use for this mark on power tools in
International Class 7 is no earlier that 1987. As you likely already know, the term "Tradesman"
originated in 1597 to describe "a worker in a skilled trade" or similar definition. In short, to the
extent the term "Tradesman" can function as a trademark, PTS adopted a very weak trademark
with a common and ongoing descriptive meaning that long predates PTS's claimed dates of first
use.

WMH has been using the designation "Tradesman" in connection with its line of vises,
which are and have been sold throughout the United States and elsewhere, from the mid 1950s
on. Copies of some of WMH's catalogs evidencing such use during this time period are attached
hereto as **Exhibit B** for your review. In each example, the designation "Tradesman" is used as a
descriptive term to identify the general application or field of use for the goods. We also note
that the term "Tradesman" is always used in close proximity to the mark WILTON. Thus, the
use of the term "Tradesman" PTS is complaining about is merely a descriptive fair use of this
term under U.S. Trademark Law. Alternatively, to the extent such use of the term "Tradesman"
can even function as a trademark, WMH's use predates PTS's use and is thereby protected under
U.S. Trademark Law.

Similarly, WMH has been using the designation "Tradesman" in connection with power
tools, the same as or related to the equipment you identified by "Order number" in your email of
April 16, 2004, from the early 1980s on. Copies of some of WMH's catalogs evidencing such
use during this time period are attached hereto as **Exhibit C**. In each example, the designation
"Tradesman" precedes the type of power tool and is a descriptive use of the term identifying the
general application or field of use for the goods. Furthermore, in the specific instances you
address in your April 16, 2004 email, each use of the designation "Tradesman" appears under
the mark WILTON and only describes the general field of use for the item. Your own email
even acknowledges this when you state "Your webiste [sic] has several entries under WILTON
brand ...". Thus, the use of the term "Tradesman" you complain of is a fair use only made to
properly describe the general application or field of use for WMH's goods. Alternatively, to the
extent WMH's use of the term "Tradesman" can even function as a trademark, WMH's use
predates PTS's use and is thereby protected under U.S. Trademark Law.

Mr. Bob James
May 14, 2004
Page 3 of 3

In addition to the above, the power tools that WMH sells under the Order numbers listed in your email are substantially items for use in industrial work shops by skilled machinists. The goods sold by PTS with the TRADESMAN mark are directed to the home user, or similar light-duty applications. For example, PTS's website states "TRADESMAN power tools are designed for home workshop craftsman and light commercial users ...." Thus, in light of the differences in commercial channels of trade between the goods, the purchasers of such goods exercise sufficient care to distinguish between PTS's TRADESMAN logo and WMH's descriptive fair use of the term in connection with its WILTON mark.

Furthermore, PTS's use of its term TRADESMAN is far from exclusive within the overall tool field, and in addition, various other descriptive uses of the term are apparent from a brief search of the internet for websites directed to consumers both in and outside the United States. At the same time, our research does not disclose PTS's designation TRADESMAN in prominent use on the internet in connection with power tools, but rather only appearing sporadically among other generic or descriptive uses of the term. Absent PTS's efforts to promote the term "Tradesman" as a source identifier, the scope of protection for the term as a mark must be narrow, and the prevalent use of the term in a descriptive sense, such as WMH's, understandable. The descriptive term used in close proximity to WMH's mark WILTON extinguishes the risk of confusion.

WMH strongly objects to the unfair and anti-competitive business tactics taken by PTS and you in seeking to disrupt WMH's business relationship with its dealers and distributors and demand that you cease all such activities. In view of the foregoing, however, will assume this addresses your concerns and will consider this matter closed. Notwithstanding the above, WMH hereby reserves all of its rights and other defenses to your allegations of infringement.

Very truly yours,

Fitch, Even, Tabin & Flannery

Edward E. Clair

EEX/340692

cc: Anthony Borgatti, President, Power Tool Specialists, Inc.
Enclosures