**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
POWER TOOL SPECIALIST, INC.,                        )
                                                    )
                    Plaintiff,                      )    Civil Action No. 04-30103 MAP
                                                    )    (KPN)
                                                    )
            v.                                      )    Judge Michael A. Ponsor
                                                    )    Magistrate Judge Kenneth P. Neiman
                                                    )
WMH TOOL GROUP, INC.,                               )    **Jury Trial Demanded**
                                                    )
                    Defendant.                      )
_____)

_____
                                                    )
WMH TOOL GROUP, INC.,                               )
                                                    )
                    Counter Plaintiff,              )
                                                    )
            v.                                      )
                                                    )
POWER TOOL SPECIALIST, INC.,                        )
                                                    )
                    Counter Defendant,              )
                                                    )
            and                                     )
                                                    )
REXON USA, CORP.                                    )
d/b/a REXON NORTH AMERICA,                          )
                                                    )
                    Third-Party Defendant,          )
                                                    )
            and                                     )
                                                    )
REXON INDUSTRIAL                                    )
CORPORATION, LTD.,                                  )
                                                    )
                    Third-Party Defendant.          )
_____)

**AMENDED ANSWER, COUNTERCLAIM & THIRD PARTY COMPLAINT**

Defendant, WMH Tool Group, Inc. ("Defendant"), answers the Complaint of Plaintiff,

Power Tool Specialists, Inc. ("Plaintiff"), as follows:

**AMENDED ANSWER**

**The Parties**

1.      Plaintiff is a corporation of the Commonwealth of Massachusetts, and has a principal place of business at 3 Craftsman Road, East Windsor, Connecticut  06088.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 and, therefore, denies the same.

2.      Upon information and belief, Defendant (f/k/a Wilton Corporation) is a corporation of the State of Washington, and has a place of business at 300 South Hicks Road, Palatine, Illinois  60067-6900 and corporate headquarters at 2420 Vantage Drive, Elgin, Illinois 60123.  Upon further information and belief, Defendant is a corporation by merger which included the former Wilton Corporation (hereinafter "Wilton"), a corporation of the state of Colorado having a principal place of business at 300 South Hicks Road, Palatine, Illinois  60067-6900.

**ANSWER:**    Defendant is a corporation of the State of Washington with a place of business at 2420 Vantage Drive, Elgin, Illinois 60123, and did acquire and merge Wilton Corporation, a corporation of the State of Colorado, which had a principal place of business at 300 South Hicks Road, Palatine, Illinois 60067-6900, therewith; however, Defendant denies all remaining allegations contained in paragraph 2.

**Jurisdiction and Venue**

3.      Jurisdiction of this Court with respect to the claims set forth herein arises under the Trademark Laws of the United States, as set forth in Title 15, United States Code; and for the related claims of unfair competition, false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Mass. Gen. Laws c. 93A, §1 et seq.  This Court also has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332, as the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00) and arises between an entity of this state and an entity of another state.  The Court also has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b), and under the doctrine of supplemental and pendant jurisdiction.

2

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00) and, therefore, denies same, but otherwise admits the remaining allegations contained in paragraph 3.

4.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a).

**ANSWER:**    Venue is proper in this District under 28 U.S.C. §1391, but Defendant denies that venue is proper in this District under 28 U.S.C. § 1400(a).

**Background Facts Common to All Counts**

5.    Plaintiff is, and has been at all times relevant to the matters alleged in this Complaint, engaged in the business of providing bench and stationary power tools marketed under the TRADESMAN Brand Name.

**ANSWER:**    Defendant is without knowledge or information to form a belief as to the truth of the allegations contained in paragraph 5 and, therefore, denies the same.

6.    In recognition of the distinctive quality of the TRADESMAN trademark, the United States Patent and Trademark Office has granted United States Trademark Registration No. 1,565,504 for the TRADESMAN trademark.

**ANSWER:**    Defendant admits that the USPTO has granted United States Trademark Registration No. 1,565,504 for the TRADESMAN trademark, but denies all other allegations contained in paragraph 6.

7.    In recognition of the distinctive quality of the TRADESMAN trademark, the United States Patent and Trademark Office has granted United States Trademark Registration No. 2,205,383 for the TRADESMAN trademark.

**ANSWER:**     Defendant admits that the USPTO has granted United States Trademark Registration No. 2,205,373 for the TRADESMAN trademark, but denies all other allegations contained in paragraph 7.

8.     U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 for TRADESMAN are in full force and effect, and Plaintiff is the owner of the trademarks, the registrations therefor and the goodwill associated therewith.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 and, therefore, denies the same.

9.     U.S. Trademark Registration No. 1,565,504 has achieved incontestable status pursuant to 15 U.S.C. § 1065.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, denies the same.

10.     U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 survived Cancellation Proceedings No. 30,322 filed by Snap-On Tools Company on March 23, 2000.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 and, therefore, denies the same.

11.     Each of U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 is prima facie evidence of the validity of the registration, of Plaintiff's ownership of the TRADESMAN mark, and of Plaintiff's exclusive right to use the TRADESMAN mark in commerce on the types of goods identified in the Registrations, as provided in 15 U.S.C. §§ 1057(b) and 1115(a).

**ANSWER:**     Defendant admits that trademark registrations, under 15 U.S.C. §§ 1057(b) and 1115(a), are prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration, but further clarifies that such prima facie evidence is subject to proof of infringement and to any legal or equitable defenses or defects.

12.     U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 are constructive notice of Plaintiff's claim of ownership of the TRADESMAN mark pursuant to 15 U.S.C. § 1072.

**ANSWER:**     Defendant admits that registration of a mark on the principal register is constructive notice of the registrant's claim of ownership thereof, but denies all other allegations contained in paragraph 12.

13.     Plaintiff also has pending trademark applications before the United States Patent and Trademark Office directed to the term "TRADESMAN". All of the foregoing marks, including the marks registered in U.S. Trademark Registration Nos. 1,565,504 and 2,205,373, are collectively referred to hereinafter as the "TRADESMAN mark".

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 and, therefore, denies the same. Accordingly, Defendant considers all references to the "TRADESMAN mark" as collectively referring only to U.S. Trademark Registration Nos. 1,565,504 and 2,205,373.

14.     Plaintiff has expended considerable time, money and effort in developing advertising and promoting the TRADESMAN mark to acquire the goodwill associated therewith. Plaintiff has made such investment to cause consumers to recognize the TRADESMAN mark as distinctly designating Plaintiff's products as originating and otherwise being affiliated with Plaintiff in order to further develop and trade upon the goodwill associated with the TRADESMAN mark.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and, therefore, denies the same.

15.     The TRADESMAN mark has acquired secondary meaning in the mind of the public which equates the mark with Plaintiff and Plaintiff's products.

**ANSWER:**     Defendant denies the allegations contained in paragraph 15.

16.     Plaintiff has expended considerable time, money, and effort in enforcing its rights in the TRADESMAN mark against other companies using, or attempting to use, the

TRADESMAN mark in connection with goods and services identical to and/or confusingly similar to those goods with which Plaintiff uses its TRADESMAN mark.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as the truth of the allegations contained in paragraph 16 and, therefore, denies the same.

17.     Upon information and belief, Defendant is engaged in the business of manufacturing, marketing and distributing power tools and machines for use in application [sic] including drilling, tapping, milling, turning, sawing, abrasive finishing and surface grinding.

**ANSWER:**     Defendant admits the allegations contained in paragraph 17.

18.     Defendant and/or its predecessor-in-interest Wilton have used, and upon information and belief, continue to use the TRADESMAN mark on their products, including "Mill/Drill Machines", "Power Feed Mill/Drill Machines", "Drilling Machines", "Drill Presses", "Belt Sanders", "Combination Belt & Disc Finishing Machines", "Combination Wood/Metal Vertical Band Saws", "Lathes", and "Vises".

**ANSWER:**     Defendant admits that it and/or its predecessors have used the term "Tradesman" on and in conjunction with products, including "Mill/Drill Machines", "Power Feed Mill/Drill Machines", "Drilling Machines", "Drill Presses", "Belt Sanders", "Combination Belt & Disc Finishing Machines", "Combination Wood/Metal Vertical Band Saws", "Lathes", and "Vises", but denies all other allegations contained in paragraph 18.

19.     Upon information and belief, Defendant primarily markets power tools and machines with the TRADESMAN mark for use in work shops, but does not restrict sales to such work shops, and as such markets and promotes power tools and machines for home workshop and commercial use generally.

**ANSWER:**     Defendant denies the allegations contained in paragraph 19.

20.     Upon information and belief, Defendant's use of the TRADESMAN mark has not been continuous, and Defendant and/or Wilton has admitted that any use of the TRADESMAN mark by Defendant has not created any rights for Defendant in the mark.  Upon further information and belief, Defendant and/or Wilton reinstituted use of the TRADESMAN mark after each period of abandoned use.

**ANSWER:**    Defendant denies the allegations contained in paragraph 20.


21.    Neither Defendant nor its predecessor-in-interest Wilton has ever received authorization from Plaintiff to use the TRADESMAN mark.

**ANSWER:**    Defendant admits that it has not received authorization from Plaintiff to use the TRADESMAN mark, but further clarifies that it does not need authorization from Plaintiff to use the term TRADESMAN because it has been using this term in conjunction with tools decades before Plaintiff alleges it began use of the designation.


22.    Notwithstanding Plaintiff's continuous and exclusive use and promotion of the TRADESMAN mark, Defendant and/or Wilton appropriated for their own benefit and use the TRADESMAN mark in connection with products identical or substantially identical to Plaintiff's products, including power tools, for sales and promotions which target the same class of customers.

**ANSWER:**    Defendant denies the allegations contained in paragraph 22.


23.    On June 29, 1995, a letter was sent to Wilton by Plaintiff to notify Wilton of Plaintiff's rights under the trademark laws with respect to the TRADESMAN mark, and requesting Wilton to cease-and-desist use of the TRADESMAN mark.

**ANSWER:**    Defendant admits that it received a letter dated June 29, 1995 from Plaintiff, the language of which speaks for itself, but denies all other allegations contained in paragraph 23.


24.    On August 3, 1995, a letter was sent to Wilton by Plaintiff requesting evidence to substantiate Wilton's claim of continuous use of the TRAESMAN mark, as well as examples of how Wilton was using the mark in connection with its products.  Wilton never provided any evidence of such continuous use of the TRADESMAN mark in response to Plaintiff's letter.

**ANSWER:**    Defendant admits that it received a letter dated August 3, 1995 from Plaintiff, the language of which speaks for itself, but denies all other allegations contained in paragraph 24.

25.     Plaintiff was not aware of Wilton use of the TRADESMAN mark for approximately ten years preceding 1995.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 and, therefore, denies the same.

26.     Upon information and belief, due to Wilton's failure to respond to Plaintiff's letters and prove continuous use of the TRADESMAN mark, Plaintiff understood that Wilton had abandoned use of the TRADESMAN mark for a period of time following Plaintiff's letters in 1995 up and until about 2001.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 and, therefore, denies the same.

27.     Upon information and belief, after a period of abandoned use of the TRADESMAN mark between about 1995 and about 2001, Wilton again began using mark without permission from Plaintiff.

**ANSWER:**     Defendant denies the allegations contained in paragraph 27.

28.     On October 15, 2001, a letter was sent to Wilton on behalf of Plaintiff to remind Wilton of Plaintiff's rights under the trademark laws with respect to the TRADESMAN mark, and again requesting Wilton to cease-and-desist use of the TRADESMAN mark.

**ANSWER:**     Defendant admits that it received a letter dated October 15, 2001 from Plaintiff, the language of which speaks for itself, but denies all other allegations contained in paragraph 28.

29.     A December 7, 2001 letter confirms discussions between counsel for Plaintiff and Ernie Torkilsen of Wilton concerning the TRADESMAN mark.  It was Plaintiff's understanding at the time that Wilton had agreed via oral communications to terminate further use of the TRADESMAN mark in connection with power tools, including without limitation the "Tradesman Mill/Drill Machine"; "Tradesman Power Feed Mill/Drill Machine"; "Tradesman Drilling Machines"; "Tradesman Drill Presses"; "Tradesman Belt Sanders"; "Tradesman Combination Belt & Disc Finishing Machine"; and "Tradesman Combination Wood/Metal Vertical Band Saws".  It was also Plaintiff's understanding that such agreement was subject to a mutually-agreeable phase out period during which Wilton would be permitted to transition to a

different mark.  It was further Plaintiff's understanding that Wilton would provide Plaintiff with evidence and documents evidencing any prior continuous use of the TRADESMAN mark in connection with vises.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 and, therefore, denies the same.

30.    Wilton never directly responded, in writing, to Plaintiff's December 7, 2001 letter and failed at the time to provide any evidence of prior continuous use of the TRADESMAN mark.

**ANSWER:**    Defendant admits that it did not respond in writing to Plaintiff's December 7, 2001 letter and did not provide any evidence of prior continuous use of the TRADESMAN mark, but further notes that Defendant had no legal obligation to provide such evidence to Plaintiff.

31.    In about April 2004, Plaintiff became aware that Wilton, now owned by and associated with Defendant, was again using the TRADESMAN mark in connection with power tools and machines identical to and/or confusingly similar to Plaintiff's TRADESMAN product line, including, but not limited to promotion of products on a web site operated by Blue Ridge Machinery, www.blueridge.dreamscape.com.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, therefore, denies the same.

32.    Conversations between Plaintiff and Defendant were again conducted in 2004, at which time, Defendant asserted that it did not plan to remove the TRADESMAN mark from its products.  Defendant reasserted its position in a letter dated May 14, 2004 from its counsel addressed to Plaintiff.

**ANSWER:**    Defendant admits that it had a conversation with and sent a letter dated May 14, 2004 to Plaintiff reconfirming Defendant's position that it would not stop using the term TRADESMAN because it has been using the term TRADESMAN far longer than Plaintiff, but denies the remaining allegations contained in paragraph 32.

33.    Defendant continues to use the TRADESMAN mark, including with respect to power tools identical and/or confusingly similar to Plaintiff's products, though Defendant asserts that it is not using the term "TRADESMAN" in a trademark sense and therefore is not alleging any rights to the TRADESMAN mark.

**ANSWER:**    Defendant denies the allegations contained in paragraph 33.

## Count I

## Federal Trademark Infringement

34.    Plaintiff re-alleges each and every allegation set forth in paragraphs 1 – 33 inclusive, and incorporates those paragraphs by reference herein.

**ANSWER:**    Defendant repeats and incorporates by reference herein its responses set forth above to the allegations in Paragraphs 1 – 33 of the Complaint.

35.    The unauthorized use by Defendant of a product designation confusingly similar to Plaintiff's federally registered TRADESMAN trademarks, namely U.S. Trademark Registration No. 1,565,504 in connection with products identical to or substantially similar to those of Plaintiff's TRADESMAN product line is likely to cause confusion, mistake, or deception, as to the source or origin of the services, and as such infringed upon Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1114.

**ANSWER:**    Defendant denies the allegations contained in paragraph 35.

36.    Upon information and belief, Defendant's use and misappropriation of Plaintiff's TRADESMAN mark in connection with products identical and/or substantially similar to those of Plaintiff's TRADESMAN product line is part of a deliberate plan of Defendant to trade on the valuable goodwill and reputation established by Plaintiff in the TRADESMAN mark and, as such, the infringement is willful.

**ANSWER:**    Defendant denies the allegations contained in paragraph 36.

37.    The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin

of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN pursuant to 15 U.S.C. §§ 1114 and 1116.

      **ANSWER:**   Defendant denies the allegations contained in paragraph 37.

38.     As a result of Defendant's infringement of the TRADESMAN mark, Plaintiff has been damaged and will continue to be damaged in an amount that cannot be presently ascertained or adequately compensated for in money damages, and will suffer further injury and irreparable harm unless and until Defendant's acts of infringement are enjoined.

      **ANSWER:**   Defendant denies the allegations contained in paragraph 38.

## Count II

## Federal Trademark Infringement

39.     Plaintiff re-alleges each and every allegation set forth in paragraphs 1 – 38 inclusive, and incorporates those paragraphs by reference herein.

      **ANSWER:**   Defendant repeats and incorporates by reference herein its responses set forth above to the allegations in Paragraphs 1 – 38 of the Complaint.

40.     The unauthorized use by Defendant of a product designation confusingly similar to Plaintiff's federally registered TRADESMAN trademarks, namely U.S. Trademark Registration No. 2,205,373 in connection with products identical to or substantially similar to those of Plaintiff's TRADESMAN product line is likely to cause confusion, mistake, or deception, as to the source or origin of the services, and as such infringed upon Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1114.

      **ANSWER:**   Defendant denies the allegations contained in paragraph 40.

41.     Upon information and belief, Defendant's use and misappropriation of Plaintiff's TRADESMAN mark in connection with products identical and/or substantially similar to those of Plaintiff's TRADESMAN product line is part of a deliberate plan of Defendant to trade on the valuable goodwill and reputation established by Plaintiff in the TRADESMAN mark and, as such, the infringement is willful.

      **ANSWER:**   Defendant denies the allegations contained in paragraph 41.

42.     The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN pursuant to 15 U.S.C. §§ 1114 and 1116.

**ANSWER:**     Defendant denies the allegations contained in paragraph 42.

43.     As a result of Defendant's infringement of the TRADESMAN mark, Plaintiff has been damaged and will continue to be damaged in an amount that cannot be presently ascertained or adequately compensated for in money damages, and will suffer further injury and irreparable harm unless and until Defendant's acts of infringement are enjoined.

**ANSWER:**     Defendant denies the allegations contained in paragraph 43.

## Count III

## Lanham Act Violations – False Designation of Origin and False Advertising

44.     Plaintiff re-alleges each and ever allegation set forth in paragraphs 1 – 43 inclusive, and incorporates those paragraphs by reference herein.

**ANSWER:**     Defendant repeats and incorporates by reference herein its responses set forth above to the allegations in Paragraphs 1 – 43 of the Complaint.

45.     This count arises under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

**ANSWER:**     Defendant agrees that this count purports to allege a claim under Section 43(a) of the Lanham Act, but denies any implication that Defendant's behavior falls within the scope of conduct considered actionable under Section 43(a) of the Lanham Act.

46.     Plaintiff has developed substantial goodwill and customer recognition in its TRADESMAN product line through extensive promotion and advertising.

**ANSWER:**     Defendant denies the allegations contained in paragraph 46.

12

47.    Upon information and belief, Defendant and its predecessor-in-interest Wilton have had prior knowledge of Plaintiff's TRADESMAN mark.  Defendant and Wilton were notified of the TRADESMAN mark by way of at least Plaintiff's letters demanding that Defendant's and Wilton's infringing activities cease.

**ANSWER:**    Defendant admits that it has had knowledge of Plaintiff's alleged use of the TRADESMAN term since receiving Plaintiff's June 29, 1995 letter, but denies all remaining allegations contained in paragraph 47.

48.    Defendant's use of Plaintiff's TRADESMAN mark to identify Defendant's products is confusingly similar to use of TRADESMAN mark by Plaintiff.

**ANSWER:**    Defendant denies the allegations contained in paragraph 48.

49.    The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such infringes Plaintiff's TRADESMAN mark pursuant to 15 U.S.C. § 1125(a).

**ANSWER:**    Defendant denies the allegations contained in paragraph 49.

50.    Due to confusion created by Defendant's use of the TRADESMAN mark, Defendant has unjustly received the benefit of Plaintiff's advertising and promotion of and goodwill in the TRADESMAN mark and product line.

**ANSWER:**    Defendant denies the allegations contained in paragraph 50.

51.    The TRADESMAN mark is willfully and intentionally used by Defendant with the intent to trade on and benefit from the goodwill associated with Plaintiff's TRADESMAN mark and product line in the minds of purchasers.

**ANSWER:**    Defendant denies the allegations contained in paragraph 51.

52.    Defendant's use of the TRADESMAN mark to identify its products is likely to mislead and misrepresent the source or origin of Defendant's products, and results in a false belief by consumers that Defendant's business is associated with Plaintiff and is authorized to use the TRADESMAN mark.

**ANSWER:**    Defendant denies the allegations contained in paragraph 52.

53.    As a result of Defendant's false or misleading representations, Plaintiff has been damaged in an amount that is unknown and cannot at the present time be ascertained.

**ANSWER:**    Defendant denies the allegations contained in paragraph 53.

54.    Unless enjoined by this Court, Defendant will continue to make false or misleading representations, to Plaintiff's continuing and irreparable injury for which there is no adequate remedy at law.

**ANSWER:**    Defendant denies the allegations contained in paragraph 54.

## Count IV

## Unfair Competition

55.    Plaintiff re-alleges each and every allegation set forth in paragraphs 1 – 54 inclusive, and incorporates those paragraphs by reference herein.

**ANSWER:**    Defendant repeats and incorporates by reference herein its responses set forth above to the allegations in Paragraphs 1 – 54 of the Complaint.

56.    By virtue of the foregoing acts, Defendant has used unfair methods of competition and unfair acts or deceptive acts or practices in the conduct of a trade or commerce, all in violation of the Mass. Gen. Laws c. 93A § 1 *et seq.* and the common law of unfair competition.

**ANSWER:**    Defendant denies the allegations contained in paragraph 56.

57.    The unauthorized use by Defendant of a mark confusingly similar to Plaintiff's TRADESMAN mark to advertise and promote products identical to and/or substantially similar to

those of Plaintiff is likely to cause confusion, mistake, and/or deception as to the source or origin of the products provide by Defendant, and as such is a violation of the common law of unfair competition and is an unfair trade practice under applicable law.

**ANSWER:**    Defendant denies the allegations contained in paragraph 57.

58.    As a result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff has been damaged in an amount that is unknown and cannot at the present time be ascertained.

**ANSWER:**    Defendant denies the allegations contained in paragraph 58.

59.    Unless enjoined by this Court, Defendant will continue to use unfair methods of competition and unfair or deceptive acts or practices, to Plaintiff's continuing and irreparable injury for which Plaintiff has no adequate remedy at law.

**ANSWER:**    Defendant denies the allegations contained in paragraph 59.

## AFFIRMATIVE DEFENSES

Defendant, WMH Tool Group, Inc., asserts the following affirmative defenses:

60.    WMH's use of the term "tradesman" has not, and does not, infringe PTS's rights to the mark TRADESMAN.

61.    This Court lacks personal jurisdiction over WMH Tool Group, Inc.

62.    The Complaint filed by Plaintiff, Power Tool Specialists, Inc., and each and every claim for relief contained therein fails to adequately state a cause of action upon which relief may be granted.

63.    Defendant's business conduct does not occur primarily and substantially in the State of Massachusetts, and therefore is not governed by Mass. Gen. Laws c. 93A.

64.    The Defendant's rights to use the term "tradesman" are superior to any rights of Plaintiff.

65.    U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 do not qualify for incontestible status under 35 U.S.C. §1065 because Plaintiff's use of the trademark TADESMAN infringes a valid right of the Defendant acquired under common law by use of the term "tradesman" continuing from a date prior to the date of the aforementioned registrations and/or because the mark TRADESMAN is or has become generic and, is therefore, unable to be accorded trademark protection.

66.    U.S. Trademark Registration No. 2,205,373 does not qualify for incontestible status under 35 U.S.C. §1065 because there is a proceeding involving the rights of this registration pending in the Patent and Trademark Office and/or in a court which has not been finally disposed of.

67.    U.S. Trademark Registration No. 1,565,504 is void *ab initio* because Plaintiff did not use the mark TRADESMAN as a trademark by January 17, 1989, the filing date of Registration No. 1,565,504.

68.    U.S. Trademark Registration No. 1,565,504 is invalid because Plaintiff's registration of the mark TRADESMAN was a mutilation of the actual mark being used, which was VALUECRAFT 10" TRADESMAN.

69.    U.S. Trademark Registration Nos. 1,565,504 and 2,205,373 are invalid and unenforceable due to Plaintiff's fraud in procuring these registrations by knowingly misstating the date of first use of the trademark TRADESMAN and/or knowingly applying for a mutilation of the actual mark in use and/or knowingly stating or implying that the mark TRADESMAN is a valid mark when Plaintiff knew of widespread generic and/or descriptive uses of that term in the industry, with the intention to induce the U.S. trademark Examiner to act or refrain from action in

reliance on the misrepresentations.  The Examiner did indeed act or refrain from action in reliance on Plaintiff's misrepresentations, thereby, resulting in the public, including the Defendant, being damaged by the USPTO's improper registration of the TRADESMAN mark.

70.    Plaintiff is barred from asserting any rights and/or recovering any relief for infringement of the mark TRADESMAN on the grounds of laches, estoppel and/or acquiescence.

71.    Plaintiff is barred from asserting any rights and/or recovering any relief for infringement of the mark TRADESMAN on the grounds of unclean hands and inequitable conduct.

72.    The mark TRADESMAN is or has become generic and, is therefore, unable to be accorded trademark protection.

73.    The mark TRADESMAN is descriptive and/or has not acquired distinctiveness and, is therefore, unable to be accorded trademark protection.

WHEREFORE, WMH denies that PTS is entitled to the relief requested.

## JURY DEMAND

WMH demands trial by jury of all issues so triable.

## AMENDED COUNTERCLAIMS

For its counterclaims against Plaintiff, Power Tool Specialists, Inc, the Defendant, WMH Tool Group, Inc., states as follows:

## THE PARTIES

74.    Counterclaim Plaintiff, WMH Tool Group, Inc., is a corporation organized and existing under the laws of the State of Washington with a place of business at 2420 Vantage Road, Elgin, Illinois 60123, and was formerly known as JET Equipment & Tools, Inc., a corporation of the State of Washington into which Wilton Corporation, a corporation of the State of Colorado, was merged on May 22, 2001 (all of the above corporations being collectively referred to hereinafter as "WMH").

75.    Counterclaim Defendant, Power Tool Specialists, Inc. (hereinafter "PTS"), is a corporation of the Commonwealth of Massachusetts with a principal place of business at 3 Craftsmen Road, East Windsor, Connecticut  06088.

## JURISDICTION AND VENUE

76.    This Court has jurisdiction since the matter in controversy arises under the Trademark Laws of the United States, as set forth in Title 15, United States Code; and for related claims of unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)) and Mass. Gen. Laws c. 93A, §1 *et seq.*  This Court also has jurisdiction over this action under 28 U.S.C. §§1331 and 1332, as the matter in controversy, exclusive of interest and costs exceeds Seventy-Five Thousand Dollars ($75,000.00) and arises between an entity of Massachusetts and an entity of another state.  This Court also has jurisdiction pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a) and (b), and under the doctrine of supplemental and pendant jurisdiction.

77.    Venue is proper in this district under 28 U.S.C. §§1391.

## GENERAL FACTS

78.    WMH received a letter from PTS dated June 29, 1995, in which PTS notified WMH that PTS claimed trademark rights to the mark TRADESMAN and requested that WMH cease and desist any further use of this mark.

79.    PTS was informed shortly after the June 29, 1995 letter that WMH had been and was using the descriptive term "Tradesman" in conjunction with tools for decades and would not cease and desist use of this term due to WMH's prior rights.

80.    WMH has used the term "Tradesman" in conjunction with tools since at least as early as 1954.

81.    WMH received another letter from PTS dated August 3, 1995, requesting that WMH provide PTS and its attorneys with proof of WMH's claims of its continuous use of TRADESMAN over the past twenty years and examples of how the mark was and is currently used.

82.    WMH did not respond to PTS's August 3, 1995 letter and considered this matter closed.

83.    Over six years later, WMH received another letter from PTS dated October 15, 2001, again informing WMH that PTS considers the mark TRADESMAN a valuable trademark and demanding that WMH immediately cease any and all display, manufacture, ordering, distribution, promotion, advertising, offering for sale, and/or sale of specific power tools, vises and any other products under the TRADESMAN mark.

84.    WMH contacted PTS shortly after receiving the October 15, 2001 letter to remind PTS that WMH had been using the term "Tradesman" in conjunction with tools well before PTS's

use, but further inquiring as to whether any amicable settlement could be reached between the parties in order to avoid further disputes over this matter.

85.     WMH received another letter from PTS dated December 7, 2001, requesting that WMH provide PTS with copies of documents that evidence WMH's first date of use of the TRADESMAN mark prior to PTS's first use.

86.     WMH did not respond to PTS's December 7, 2001 letter and again considered this matter closed.

87.     In 2004, WMH was notified by one of its customers, Blue Ridge Machinery, that Rexon Group had contacted it and demanded that Blue Ridge Machinery immediately remove and cease use of the term "Tradesman" in conjunction with WMH's products.

## COUNT I
## UNFAIR COMPETITION UNDER THE LANHAM ACT §43(a)

88.     Counterclaim Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 87 above.

89.     PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark are false and misleading.

90.     PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were made in interstate commerce.

91.     PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were made in connection with goods or services.

92.    PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were initiated by a Sales & Marketing Manager of the PTS and therefore occurred in commercial advertising or promotion.

93.    PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark misrepresent the nature or qualities of the goods, services, or commercial activities of another, in particular, WMH's products for the tradesman.

94.    WMH is suffering damages and irreparable harm as a result of PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark, and will continue to suffer irreparable harm unless PTS is enjoined by this Court.

95.    PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark violate the Lanham Act §43(a) (15 U.S.C. §1125(a))(2000).

## COUNT II
## UNFAIR COMPETITION UNDER MASSACHUSETTS' CHAPTER 93A

96.    Counterclaim Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 95 above.

97.    PTS's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark are false, misleading and/or deceptive.

98.    A reasonable opportunity for further investigation or discovery is likely to provide evidentiary support that PTS's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark were made in bad faith and/or based on an inadequate infringement investigation.

99.    PTS's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark were published to at least one existing customer of WMH.

100.    PTS's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark are causing WMH damages and irreparable harm to its business relationships, and will continue to do so unless this Court enjoins such activities.

101.    PTS's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark violate Mass. Gen. Laws c. 93A, §1 *et seq*.

## COUNT III
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

102.    Counterclaim Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 101 above.

103.    WMH reasonably expected to enter into valid business relationships and further contracts with at least Blue Ridge Machinery.

104.    PTS knew of WMH's expectancy to enter into valid business relationships and further contracts with at least Blue Ridge Machinery.

105.    PTS's misrepresentations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were purposeful interference intended to prevent WMH's legitimate expectancy from being fulfilled.

106.    WMH is suffering damages and irreparable harm as a result of PTS's purposeful interference, and will continue to suffer irreparable harm unless PTS is enjoined by this Court.

107.    PTS's conduct constitutes tortious interference with prospective contractual relationships.

## COUNT IV

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 1,565,504

108.    Counterclaim Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 107 above.

109.    On information and belief,  PTS presently owns Registration 1,565,504.

110.    On information and belief, PTS filed its application for Registration No. 1,565,504 for the mark TRADESMAN on January 17, 1989, and the Patent and Trademark Office issued Registration 1,565,504 on the Principal Register November 14, 1989.

111.    In its Application for Registration No. 1,565,504, PTS claimed first use dates for the mark TRADESMAN anywhere and in commerce on the specified goods as early as February 1987.

112.    The Patent and Trademark Office initially refused to register Registration No. 1,565,504 based on likelihood of confusion with Registration Nos. 1,460,651 and 1,262,851.

113.    In response to this initial refusal, in a letter to the Patent and Trademark Office dated March 23, 1989, PTS submitted evidence claiming use of its mark as early as a time around March 23, 1981.

114.    The Patent and Trademark Office thereafter withdrew its initial refusal and allowed the application for Registration No. 1,565,504 to proceed to registration.

115.    WMH has used the term "tradesman" in connection with its goods, namely, tools since at least 1954, and has acquired rights in the term "tradesman" continuing from a date prior to the date of Registration No. 1,565,504.

116.    PTS is using Registration No. 1,565,504 to enforce its alleged rights in the designation TRADESMAN against WMH.

117.    In enforcing its alleged rights, PTS has not alleged or offered any evidence, despite WMH's repeated requests, purporting to show use of the mark TRADESMAN on the specified goods earlier than 1986, which date is substantially later than the claim of use submitted to the Patent and Trademark Office in the letter of March 23, 1989.

118.    In enforcing its alleged rights, PTS has provided WMH with scant evidence, if any, supporting use of its designation TRADESMAN prior to filing the application for Registration No. 1,565,504, and has not alleged or offered any evidence, purporting to show use of the mark TRADESMAN on the goods specified in Registration No. 1,565,504, with the possible exception of power saws, at any time prior to the filing date of the application for Registration No. 1,565,504.

## A. FRAUD ON THE PATENT AND TRADEMARK OFFICE

119.    On information and belief, at the time PTS submitted the letter dated March 23, 1989 to the Patent and Trademark Office, PTS knew, should have known, or had reason to believe that it had not started to use the designation TRADESMAN on the goods specified in Registration No. 1,565,504 at a time around March 23, 1981, and that the statement was false.

120.    On information and belief, the false claim of use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

121.    On information and belief, by reason of PTS's fraud on the Patent and Trademark Office, Registration No. 1,565,504 was issued and maintained, and has and is causing damage to the WMH.

## B.  FRAUD ON THE PATENT AND TRADEMARK OFFICE

122.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, PTS was not using the mark TRADESMAN on each of the goods specified in Registration No. 1,565,504, with the possible exception of power saws.

123.    At the time PTS filed its application for Registration No. 1,565,504, it knew, should have known, or had reason to believe that it had never used the mark TRADESMAN on each of the goods specified in its application, with the possible exception of power saws.

124.    On information and belief, the false claim of use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

125.    On information and belief, by reason of PTS's fraud on the Patent and Trademark Office, Registration No. 1,565,504 was issued, and has and is causing damage to WMH.

## C.  FRAUD ON THE PATENT AND TRADEMARK OFFICE

126.    On information and belief, PTS is a related company of, a subsidiary of, or otherwise associated with Rexon Industrial Corporation, Ltd.

127.    On information and belief, during a period prior to PTS's use or adoption of the designation TRADESMAN, and certainly well before the filing date of its application, which resulted in the issuance of Registration No. 1,565,504, WMH had communications and placed orders for tools with Rexon Industrial Corporation, Ltd. in which WMH's use of the term "Tradesman" in commerce was disclosed and became known to PTS.

128.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, Registrant submitted a sworn statement that "to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce, either in identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other corporation, to cause confusion or to cause mistake, or to deceive".

129.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, PTS knew, should have known, or had reason to believe that its sworn statement was a material false statement upon which the Patent and Trademark Office would reasonably rely, and PTS made the false statement with the intent to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

130.    On information and belief, by reason of PTS's bad faith in the adoption of the designation TRADESMAN and fraud on the Patent and Trademark Office, Registration No. 1,565,504 was issued and maintained, and has and is causing damage to WMH.

### D.  NON-USE OF THE MARK

131.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, it had not used the mark TRADESMAN on the specified goods in commerce.

**E.  ABANDONMENT**

132.    PTS has not and did not use its mark TRADESMAN in commerce on each of the goods specified in Registration No. 1,565,504 for a period of three (3) years, with the possible exception of power saws.

133.    PTS abandoned its mark TRADESMAN with the intent not to resume use on each of the goods specified in Registration No. 1,565,504, with the possible exception of power saws.

**COUNT V**

**CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,205,373**

134.    On information and belief,  PTS presently owns Registration 2,205,373 for the mark TRADESMAN, which specifies use of the mark in commerce on the goods "power tools, namely, nailers, sanders, lathes, saws, mortising machines, drill presses, shapers, planers, grinders, jointers, dust collectors, and parts and accessories therefor, including chucks, blades, bits, chisels, knives, discs, drums, wheels, belts, sleeves, abrasive attachments, arbors, dados, moulding inserts, hex keys, brackets, plates, vises, jaws, clamps, guages, rip fences, guides, extensions, jigs, blocks, work supports, rollers, stands, casters, tables, tool collectors, dust chutes, vacuum attachments, control switches, cleaners, chuck adaptors, and push blocks."

135.    On information and belief, PTS filed its application for Registration No. 2,205,373 for the mark TRADESMAN on August 25, 1997, and the Patent and Trademark Office issued Registration 2,205,373 on the Principal Register November 24, 1998.

136.    On information and belief, in its Application for Registration No. 2,205,373, PTS filed a sworn statement is which it claimed first use dates for the mark TRADESMAN anywhere and in commerce on all of the specified goods as early as February 1, 1987.

137.    On information and belief, on August 10, 2004, PTS filed submissions with the Patent and Trademark Office under Section 8 and Section 15 of the Trademark Act to maintain Registration No. 2,205,373.

138.    On information and belief, in its submission under Section 8 and Section 15 to maintain Registration No. 2,205,373, PTS filed a sworn statement is which it claimed continuing use of the mark TRADESMAN in commerce on all of the goods specified in Registration No. 2,205,373.

139.    WMH has used the term "tradesman" in connection with its goods, namely, tools since at least 1954, and has acquired rights in the term "tradesman" continuing from a date prior to the dates set forth in Registration No. 2,205,373.

140.    PTS is using Registration No. 2,205,373 to enforce its alleged rights in the designation TRADESMAN against WMH.

141.    In enforcing its alleged rights, PTS has not provided evidence purporting to show use of the mark TRADESMAN on each of the goods specified in Registration No. 2,205,373, but rather only has presented evidence, which at best purports to show use of the mark on power saws at the time that the application for Registration No. 2,205,373 was filed.

## A.  FRAUD ON THE PATENT AND TRADEMARK OFFICE

142.    On information and belief, at the time PTS filed its application for Registration No. 2,205,373, PTS was not using the mark TRADESMAN on each of the goods specified in Registration No. 2,205,373, with the possible exception of power saws.

143.    At the time that PTS filed its application for Registration No. 2,205,373, PTS knew, should have known, or had reason to believe that it had never used the mark

TRADESMAN on each of the goods specified in its application, with the possible exception of power saws, and that the claim of use was false.

144.    On information and belief, the false claim of use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to issue Registration No. 2,205,373.

145.    On information and belief, by reason of PTS's fraud on the Patent and Trademark Office, Registration No. 2,205,373 was issued, and has and is causing damage to WMH.

146.    On information and belief, at the time PTS filed its submissions under Section 8 and Section 15 to maintain Registration No. 2,205,373, PTS was not using the mark TRADESMAN on each of the goods specified in Registration No. 2,205,373.

147.    On information and belief, at the time that PTS filed its submissions under Section 8 and Section 15 to maintain Registration No. 2,205,373, PTS knew, should have known, or had reason to believe that it had never used the mark TRADESMAN on each of the goods specified in Registration No. 2,205,373, and that the declaration of continuing use was a false claim.

148.    On information and belief, the false claim of continuing use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to maintain Registration No. 2,205,373.

149.    On information and belief, by reason of PTS's fraud on the Patent and Trademark Office, Registration No. 2,205,373 was maintained, and has and is causing damage to WMH.

## B. FRAUD ON THE PATENT AND TRADEMARK OFFICE

150.     On information and belief, PTS is a related company of, a subsidiary of, or otherwise associated with Rexon.

151.     On information and belief, during a period prior to PTS's use or adoption of the designation TRADESMAN, and certainly well before the filing date of its application, which resulted in the issuance of Registration No. 2,205,373 or other registration, WMH had communications and placed orders for tools with Rexon in which WMH's use of the term "Tradesman" in commerce was disclosed and became known to PTS.

152.     On information and belief, at the time that PTS filed its application for Registration No. 2,205,373, PTS submitted a sworn statement that to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce, either in identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other corporation, to cause confusion or to cause mistake, or to deceive, or like sworn statement.

153.     On information and belief, at the time PTS filed its application for Registration No. 2,205,373, PTS knew, should have known, or had reason to believe that its sworn statement was a material false statement upon which the Patent and Trademark Office would reasonably rely, and that PTS made the false statement with the intent to induce the Patent and Trademark Office to issue Registration No. 2,205,373.

154.     On information and belief, by reason of PTS's bad faith in the adoption of the designation TRADESMAN and fraud on the Patent and Trademark Office, Registration No. 2,205,373 was issued and maintained, and has and is causing damage to WMH.

## C.  FRAUD ON THE PATENT AND TRADEMARK OFFICE

155.    On information and belief, in its Application for Registration No. 2,205,373, PTS claimed ownership of Registration No. 1,565,504 as a prior registration for the mark TRADESMAN specifying the goods "stationary/bench electric power tools, namely; table saws, floor drill presses, miter saws, floor band saws, floor jointers and parts therefor."

156.    On information and belief, PTS filed its application for Registration No. 1,565,504 for the mark TRADESMAN on January 17, 1989, and the Patent and Trademark Office issued Registration 1,565,504 on the Principal Register November 14, 1989.

157.    In its Application for Registration No. 1,565,504, PTS claimed first use dates for the mark TRADESMAN anywhere and in commerce on the specified goods as early as February 1987.

158.    The Patent and Trademark Office initially refused to register Registration No. 1,565,504 based on likelihood of confusion with Registration Nos. 1,460,651 and 1,262,851.

159.    In response to this initial refusal, in a letter to the Patent and Trademark Office dated March 23, 1989, PTS submitted evidence claiming use of its mark as early as a time around March 23, 1981.

160.    The Patent and Trademark Office thereafter withdrew its initial refusal and allowed the application for Registration No. 1,565,504 to proceed to registration.

161.    WMH has used the term "tradesman" in connection with its goods, namely, tools since at least 1954, and has acquired rights in the term "tradesman" continuing from a date prior to the date of Registration No. 1,565,504.

162.    PTS is using Registration No. 1,565,504 to enforce its alleged rights in the designation TRADESMAN against WMH.

163.    In enforcing its alleged rights, PTS has not alleged or offered any evidence, despite WMH's repeated requests, purporting to show use of the mark TRADESMAN on the specified goods earlier than 1986, which date is substantially later than the claim of use submitted to the Patent and Trademark Office in the letter of March 23, 1989.

164.    In enforcing its alleged rights, PTS has provided WMH with scant evidence supporting use of its mark prior to filing the application for Registration No. 1,565,504, and has not alleged or offered any evidence, purporting to show use of the mark TRADESMAN on the goods specified in Registration No. 1,565,504, with the possible exception of power saws, at any time prior to the filing date of the application for Registration No. 1,565,504.

165.    On information and belief, at the time PTS submitted the letter dated March 23, 1989 to the Patent and Trademark Office, PTS knew, should have known, or had reason to believe that it had not started to use the designation TRADESMAN on the goods specified in Registration No. 1,565,504 at a time around March 23, 1981, and that the statement was false.

166.    On information and belief, the false claim of use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

167.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, PTS was not using the mark TRADESMAN on each of the goods specified in Registration No. 1,565,504, with the possible exception of power saws.

168.    At the time that PTS filed its application for Registration No. 1,565,504, it knew, should have known, or had reason to believe that it had never used the mark TRADESMAN on each of the goods specified in its application, with the possible exception of power saws.

169.    On information and belief, the false claim of use of the mark was a material fact reasonably relied upon by the Patent and Trademark Office and intended by PTS to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

170.    On information and belief, during a period prior to PTS's use or adoption of the designation TRADESMAN, and certainly well before the filing date of its application, which resulted in the issuance of Registration No. 1,565,504, WMH had communications and placed orders for tools with Rexon in which WMH's use of the term "Tradesman" in commerce was disclosed and became known to PTS.

171.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, PTS submitted a sworn statement that "to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce, either in identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other corporation, to cause confusion or to cause mistake, or to deceive".

172.    On information and belief, at the time PTS filed its application for Registration No. 1,565,504, PTS knew, should have known, or had reason to believe that its sworn statement was a material false statement upon which the Patent and Trademark Office would reasonably rely, and that PTS made the false statement with the intent to induce the Patent and Trademark Office to issue Registration No. 1,565,504.

173.    On information and belief, by reason of PTS's bad faith in the adoption of the designation TRADESMAN and fraud on the Patent and Trademark Office, Registration No. 1,565,504 was issued and maintained, and has and is causing damage to WMH.

174.    On information and belief, at the time PTS filed its application for Registration No. 2,205,373, PTS knew, should have known, or had reason to believe that Registration No. 1,565,504 was obtained by fraud, and maintained by fraud.

175.    On information and belief, at the time PTS filed its application for Registration No. 2,205,373, PTS failed to disclose to the Patent and Trademark Office that Registration No. 1,565,504 was obtained by fraud, and maintained by fraud, and the failure to disclose was material and made to induce the Patent and Trademark Office to issue Registration No. 2,205,373.

176.    On information and belief, at the time PTS filed its application for Registration No. 2,205,373, PTS knew, should have known, or had reason to believe that the Patent and Trademark Office would reasonably rely on the claim of ownership in Registration No. 1,565,504 to issue Registration No. 2,205,373.

### D.  NON-USE OF THE MARK

177.    On information and belief, at the time PTS filed its application for Registration No. 2,205,373, it had not used the mark TRADESMAN on the specified goods in commerce, with the possible exception of power saws.

### E.  ABANDONMENT OF THE MARK

178.    PTS has not and did not use its mark TRADESMAN in commerce on each of the goods specified in Registration No. 2,205,373 for a period of three (3) years, with the possible exception of power saws.

179.    PTS abandoned its mark TRADESMAN with the intent not to resume use on each of the goods specified in Registration No. 2,205,373, with the possible exception of power saws.

**PRAYER FOR RELIEF**

WHEREFORE, WMH requests relief on its Amended Counterclaims as follows:

A.      Judgment that the complaint be dismissed with prejudice;

B.      Judgment that this is an exceptional case pursuant to 25 U.S.C. §1117, and an award of costs and attorneys' fees for defendant, WMH;

C.      Judgment canceling U.S. Trademark Registration No. 1,565,504.

D.      Judgment canceling U.S. Trademark Registration No. 2,205,373.

E.      A temporary restraining order and preliminary and permanent injunction ordering Rexon Group and those acting in concert with it not to disparage WMH's products, violate the Lanham Act §43(a), and violate Mass. Gen. Laws c. 93A, §1 *et seq.*, by falsely alleging that WMH's products infringe the TRADESMAN mark.

F.      Damages adequate to compensate WMH for Rexon Group's violations of the Lanham Act §43(a) and Mass. Gen. Laws c. 93A, §1 *et seq.*

G.      For such other and further relief which this Court, in its discretion, may deem just and proper.

**JURY DEMAND**

WMH demands trial by jury of all issues so triable.

## AMENDED THIRD PARTY COMPLAINT

For its complaint against Third-Party Defendants, Rexon USA, Corp. and Rexon Industrial Corporation, Ltd., the Third-Party Plaintiff, WMH Tool Group, Inc., states as follows:

## THE PARTIES

180.    Third-Party Plaintiff, WMH Tool Group, Inc., is a corporation organized and existing under the laws of the State of Washington with a place of business at 2420 Vantage Road, Elgin, Illinois 60123, and was formerly known as JET Equipment & Tools, Inc., a corporation of the State of Washington into which Wilton Corporation, a corporation of the State of Colorado, was merged on May 22, 2001 (all of the above corporations being collectively referred to hereinafter as "WMH").

181.    Counterclaim Defendant, Power Tool Specialists, Inc. (hereinafter "PTS"), is a corporation of the Commonwealth of Massachusetts with a principal place of business at 3 Craftsmen Road, East Windsor, Connecticut 06088.

182.    Third-Party Defendant, Rexon USA, Corp. (hereinafter "Rexon"), is a corporation of the Commonwealth of Massachusetts with a principal place of business at 3 Craftsmen Road, East Windsor, Connecticut 06088, and is doing business as Rexon North America.

183.    Third-Party Defendant, Rexon Industrial Corporation, Ltd. (hereinafter referred to individually as "Rexon" and collectively with Rexon USA and PTS as "Rexon Group") is a corporation organized and existing under the laws of Taiwan with its principal place of business at No. 261 Renhua Road, Taichung Hsien, Tali City, Taiwan.

**JURISDICTION AND VENUE**

184.    This Court has jurisdiction since the matter in controversy arises under the Trademark Laws of the United States, as set forth in Title 15, United States Code; and for related claims of unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)) and Mass. Gen. Laws c. 93A, §1 *et seq.*  This Court also has jurisdiction over this action under 28 U.S.C. §§1331 and 1332, as the matter in controversy, exclusive of interest and costs exceeds Seventy-Five Thousand Dollars ($75,000.00) and arises between an entity of Massachusetts and an entity of another state.  This Court also has jurisdiction pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a) and (b), and under the doctrine of supplemental and pendant jurisdiction.

185.    Venue is proper in this district under 28 U.S.C. §§1391.

**GENERAL FACTS**

186.    WMH received a letter from PTS dated June 29, 1995, in which PTS notified WMH that PTS claimed trademark rights to the mark TRADESMAN and requested that WMH cease and desist any further use of this mark.

187.    PTS was informed shortly after the June 29, 1995 letter that WMH had been and was using the descriptive term "Tradesman" in conjunction with tools for decades and would not cease and desist use of this term due to WMH's prior rights.

188.    WMH has used the term "Tradesman" in conjunction with tools since at least as early as 1954.

189.    WMH received another letter from PTS dated August 3, 1995, requesting that WMH provide PTS and its attorneys with proof of WMH's claims of its continuous use of TRADESMAN over the past twenty years and examples of how the mark was and is currently used.

190.    WMH did not respond to PTS's August 3, 1995 letter and considered this matter closed.

191.    Over six years later, WMH received another letter from PTS dated October 15, 2001, again informing WMH that PTS considers the mark TRADESMAN a valuable trademark and demanding that WMH immediately cease any and all display, manufacture, ordering, distribution, promotion, advertising, offering for sale, and/or sale of specific power tools, vises and any other products under the TRADESMAN mark.

192.    WMH contacted PTS shortly after receiving the October 15, 2001 letter to remind PTS that WMH had been using the term "Tradesman" in conjunction with tools well before PTS's use, but further inquiring as to whether any amicable settlement could be reached between the parties in order to avoid further disputes over this matter.

193.    WMH received another letter from PTS dated December 7, 2001, requesting that WMH provide PTS with copies of documents that evidence WMH's first date of use of the TRADESMAN mark prior to PTS's first use.

194.    WMH did not respond to PTS's December 7, 2001 letter and again considered this matter closed.

195.    In 2004, WMH was notified by one of its customers, Blue Ridge Machinery, that Rexon Group had contacted it and demanded that Blue Ridge Machinery immediately remove and cease use of the term "Tradesman" in conjunction with WMH's products.

## COUNT I

## UNFAIR COMPETITION UNDER THE LANHAM ACT §43(a)

196.    Third-Party Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 195 above.

197.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark are false and misleading.

198.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were made in interstate commerce.

199.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were made in connection with goods or services.

200.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were initiated by a Sales & Marketing Manager of the Rexon Group and therefore occurred in commercial advertising or promotion.

201.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark misrepresent the nature or qualities of the goods, services, or commercial activities of another, in particular, WMH's products for the tradesman.

202.    WMH is suffering damages and irreparable harm as a result of Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark, and will continue to suffer irreparable harm unless Rexon Group is enjoined by this Court.

203.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark violate the Lanham Act §43(a) (15 U.S.C. §1125(a))(2000).

## COUNT II
### UNFAIR COMPETITION UNDER MASSACHUSETTS' CHAPTER 93A

204.    Third-Party Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 203 above.

205.    Rexon Group's representations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark are false, misleading and/or deceptive.

206.    A reasonable opportunity for further investigation or discovery is likely to provide evidentiary support that Rexon Group's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark were made in bad faith and/or based on an inadequate infringement investigation.

207.    Rexon Group's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark were published to at least one existing customer of WMH.

208.    Rexon Group's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark are causing WMH damages and irreparable harm to its business relationships, and will continue to do so unless this Court enjoins such activities.

209.    Rexon Group's false, misleading and/or deceptive representations regarding WMH's alleged infringement of the TRADESMAN mark violate Mass. Gen. Laws c. 93A, §1 *et seq.*

## COUNT III

## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

210.    Third-Party Plaintiff, WMH, repeats and re-alleges the facts set forth in Paragraphs 1 – 209 above.

211.    WMH reasonably expected to enter into valid business relationships and further contracts with at least Blue Ridge Machinery.

212.    Rexon Group knew of WMH's expectancy to enter into valid business relationships and further contracts with at least Blue Ridge Machinery.

213.    Rexon Group's misrepresentations to at least Blue Ridge Machinery regarding WMH's alleged infringement of the TRADESMAN mark were purposeful interference intended to prevent WMH's legitimate expectancy from being fulfilled.

214.    WMH is suffering damages and irreparable harm as a result of Rexon Group's purposeful interference, and will continue to suffer irreparable harm unless Rexon Group is enjoined by this Court.

215.    Rexon Group's conduct constitutes tortious interference with prospective contractual relationships.

**PRAYER FOR RELIEF**

WHEREFORE, WMH requests relief on its Amended Third Party Complaint as follows:

A.    Judgment that this is an exceptional case pursuant to 25 U.S.C. §1117, and an award of costs and attorneys' fees for Third-Party Plaintiff, WMH;

B.    A temporary restraining order and preliminary and permanent injunction ordering Rexon Group and those acting in concert with it not to disparage WMH's products, violate the Lanham Act §43(a), and violate Mass. Gen. Laws c. 93A, §1 *et seq.*, by falsely alleging that WMH's products infringe the TRADESMAN mark.

C.    Damages adequate to compensate WMH for Rexon Group's violations of the Lanham Act §43(a) and Mass. Gen. Laws c. 93A, §1 *et seq.*

D.    For such other and further relief which this Court, in its discretion, may deem just and proper.

**JURY DEMAND**

WMH demands trial by jury of all issues so triable.


Respectfully submitted,

/s/ Eben A. Krim
Steven M. Bauer, Esq. (BBO # 542531)
Eben A. Krim, Esq. (BBO # 652506)
Proskauer Rose LLP
One International Place – 14th Floor
Boston, Massachusetts  02110
Telephone:  617.526.9600
Facsimile:  617.526.9899

*Of Counsel*
Mark W. Hetzler, Esq.
Edward E. Clair, Esq.
Fitch, Even, Tabin & Flannery
120 South LaSalle Street, Suite 1600
Chicago, Illinois  60603
Telephone:  312.577.7000
Facsimile:  312.577.7007

Attorneys for Defendant
WMH Tool Group, Inc.


November 18, 2004